**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| Justin Berberich,<br><br>                                     Plaintiff,<br><br>v.<br><br>Kansas City Southern Railway Co.<br><br>                                     Defendant. | Case No.: _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1.      Railroads have a history of putting productivity ahead of safety. Employees who refuse to compromise their safety often find themselves terminated, which the railroads accomplish by disparately applying their vague and voluminous workplace rules. Justin Berberich was a victim of these illegal practices.

## PARTIES

2.      Berberich resides in Pittsburg, Kansas.

3.      Kansas City Southern, which provides freight rail transportation services across the country, including Kansas, is headquartered in Kansas City, Missouri.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

5.      Venue is proper in this district because Berberich resides in this district, Kansas City Southern operates in this district, Berberich worked for Kansas City Southern in this district, and Kansas City Southern retaliated against Berberich in this district.

## FACTUAL ALLEGATIONS

6.      When a train is in operation, there are usually two people aboard: a conductor and an engineer. The engineer operates the train. The conductor acts as the engineer's eyes and ears, and performs a variety of tasks to ensure the train operates safely.

7.      Berberich was a conductor for Kansas City Southern.

8.      Conductors are responsible for lining switches. A switch is a portion of railroad track that guides a train from one track to another.

9.      "Lining the switch" refers to a trainman manually moving the switch from one position to the other, thereby changing the route of the track.

10.     It can take a while for a conductor to line the switch. If the conductor is at the train's rear and the switch is at the train's front, as is often the case, the train cannot depart until the conductor walks to the trains front (which can be miles away) lines the switch, and then walks back. During this time, the train cannot move.

11.     Kansas City Southern can reduce the time its trains are immobile by having the engineer line the switch, rather than the conductor.

12.      Having an engineer line the switch, however, is dangerous because it requires the engineer to leave the locomotive unattended.

13.     While locomotive have airbrakes, which the engineer can engage, it is dangerous to rely on those alone.

14.     That is why Rule 7.6 of the General Code of Operating Rules, which have been adopted by numerous Class I railroads (including Kansas City Southern), reads as follows:

> Do not depend on the airbrakes to hold a train, engine or cars in place when left unattended. Apply sufficient number of hand brakes to prevent movement. If hand brakes are not adequate, block the wheels. When the engine is coupled to a train or car standing on a grade, do not release the hand brakes until the brake system is fully charged. When cars are moved

from any track, apply enough hand brakes to prevent any remaining cars from moving.[1]

15.     In January of 2019, Kansas City Southern was telling its engineers to line the switch when the engineer was closer to the switch than the conductor. Kansas City Southern made this change to reduce the amount of time its trains were waiting for the switch to be lined.

16.     Berberich refused to comply with this order.

17.     Berberich's reasons for refusing to comply are that it was unsafe and a rule violation.

18.     After one instance in which Berberich insisted on lining the switch, contrary to Kansas City Southern's instructions, Berberich's manager made clear to Berberich and others that he was upset by Berberich's refusal.

19.     Shortly thereafter, a coworker overheard Berberich's manager talking with his manager about trains being delayed because of Berberich, during which Berberich's manager's manager told Berberich's manager to manufacture a reason to get rid of Berberich.

20.     Berberich's manager began birddogging Berberich thereafter. [2]

---

[1] Tying down a train not only requires that the airbrakes be put on but also that someone walk the train and manually apply brakes on a sufficient number of cars. Tying down the train therefore takes more time than having the conductor line the switch, no matter how far away from the switch the conductor may be.

[2] Kansas City Southern's collective bargaining agreement with Berberich's union prevents it from disciplining employees unless they commit a workplace rule violation that rises to a certain level of seriousness. In theory, this lessens the authoritarian-type control railroads have historically wielded over their employees; however, Kansas City Southern has developed an end-around to this problem. Specifically, it has instituted a voluminous set of vague workplace rules, which are arguably violated—in one way or another—by every employee on a daily basis. Indeed, when a union ensures that all of its members follow the letter of each rule, it engages in a "work-to-rule" campaign, which constitutes a strike under the Railway Labor Act because little to no work can actually be done. *See*, *e.g.*, *United Air Lines, Inc. v. Air Line Pilots Ass'n*, 2008 U.S. Dist. LEXIS 94750, at *65 (N.D. Ill. Nov. 17, 2008). Kansas City Southern can therefore follow around an employee of whom it wants to be rid, watching him or her until it observes a workplace rule violation. This is known as "birddogging," a practice with which Kansas City

21.     Then, Berberich's manager accused Berberich of leaning on a railway car, which is a workplace rule violation.

22.     Berberich was not leaning on the car; rather, he put his hands on two cars to steady himself.

23.     Berberich puts his hands on the cars to steady himself because it was an icy day, and he was concerned about slipping and falling.

24.     Berberich's manager's manager used the supposed workplace-rule violation to justify terminating Berberich anyway.

25.     Kansas City Southern has never disciplined—let alone terminated—anyone else for leaning on a railway car.

26.     Berberich filed a claim the Department of Labor, alleging that his termination violated the Federal Railroad Safety Act, 49 U.S.C. § 20109

27.     Berberich's union also grieved his termination under the Railway Labor Act.

28.     While Berberich's claim with the Department of Labor was being investigated, an arbitrator ruled on his union grievance, reinstating Berberich.

29.     Berberich subsequently had to lay off from work so that he could participate in the Department of Labor's investigation.

30.     Berberich's layoff contributed to Kansas City Southern suspending him for absenteeism.

---

Southern's employees are familiar. While this may seem bizarre outside of the railroad industry, the Federal Railroad Safety Act was amended exactly because railroads were birddogging employees who objected to railroads' violations of federal regulations. *See, e.g.*, *Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*, 110th Cong. 84 (2007).

31.     Kansas City Southern would not have disciplined Berberich absent his layoff to participate in the Department of Labor's investigation.

32.     Berberich filed a second claim with the Department of Labor regarding the above-discussed suspension on September 8, 2022.

33.     Berberich cannot remove that claim to federal court until April 6, 2023. *See* 49 U.S.C. § 20109(d)(3).

34.     At that time, Berberich intends to amend his complaint to add a claim for his suspension.

## CAUSES OF ACTION

### VIOLATIONS OF 49 U.S.C. § 20109

35.     The Federal Railroad Safety Act ("FRSA") prohibits railroad carriers from taking an adverse action against an employee for engaging in protected activity.

36.     Berberich engaged in protected activity under the FRSA when he insisted on lining the switch, when he posted his hands on the cars to avoid slipping and falling, and when he laid off to assist the Department of Labor with its investigation of his claim.

37.     Kansas City Southern took adverse actions against Berberich when it terminated him for supposedly leaning on cars and when it disciplined him for absenteeism.

38.     Berberich's protected activity contributed to Kansas City Southern's taking the above-described adverse actions against him.

39.     In fact, the adverse actions against Berberich resulted directly from his protected activity.

### REQUEST FOR RELIEF

40.     Berberich requests that the Court find Kansas City Southern violated the FRSA.

41.     Berberich designates Kansas City, Kansas as the place for the trial in this matter.

42.     Berberich further requests that the Court order Kansas City Southern to:

- clear and/or expunge any record of misconduct by him regarding his alleged workplace rule violation;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for punitive damages in the maximum amount allowed by law.

43.     Berberich further requests that the Court order judgment against Kansas City Southern for all other relief available under the FRSA and such other relief as the Court deems just and equitable.

Dated:  October 19, 2022

**GROVES POWERS LLC**

/s/ Steven L. Groves
Steven L. Groves, KS Bar #22874
One U.S. Bank Plaza
505 N. 7th St., Ste. 2010
St. Louis, MO 63101
Phone: (314) 696-2300
sgroves@grovespowers.com

Nicholas D. Thompson (MN#0389609)*
Mark E. Thomson (0398260)* **CASEY JONES LAW FIRM**
1330 Lagoon Ave, 4th Floor
Minneapolis, MN 55408
Phone: (612) 699-4703
nthompson@caseyjones.law
mthomson@caseyjones.law

*pro hac vice application pending*

**COUNSEL FOR PLAINTIFF**