IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN BERBERICH,

    *Plaintiff,*

vs.

THE KANSAS CITY SOUTHERN
RAILWAY COMPANY,

    *Defendant.*

Case No. 2:22-cv-02426-EFM-TJJ

**MEMORANDUM AND ORDER**

    Before the Court is Defendant Kansas City Southern Railway Company ("KCSR")'s Motions for Summary Judgment (Doc. 36). Plaintiff Justin Berberich's lawsuit arises under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq. Plaintiffs alleges he was unjustly disciplined on three separate occasions for engaging in protected activity. Because Defendant failed to make any argument in its initial brief regarding Plaintiff's absenteeism claim, the Court denies Defendant's Motion as to that claim. However, because Plaintiff fails to establish his prima facie case under the FRSA's burden-shifting analysis on his two other claims, the Court grants Defendant's Motion as to those claims.

## I.  Factual and Procedural Background[1]

In 2006, Plaintiff began working for Defendant, a railroad company, as a train conductor. In January 2019, Plaintiff decided to throw a switch[2] instead of having the engineer do so. This required him to walk from the back of the train to the front, throw the switch, and then walk back. The parties dispute whether Defendant had a standing order, which would require engineers—who work in the front of the train—to throw the switch instead. Plaintiff claims that having engineers throw the switch would result in an unattended engine car, creating a dangerous condition. Plaintiff's decision led to a delay in the train's schedule.

On February 12, 2019, Plaintiff put his arm on a rail car, an act which violates Defendant's safety regulations. Plaintiff claims he did so to brace himself due to icy conditions. A video submitted by the parties shows Plaintiff walking toward the railcar without difficulty, standing next to it for several seconds, and then reaching out his arm to lean against the railcar while crossing his legs. He stood there for roughly 40 seconds.

Two days later, Mike Pollard, Plaintiff's supervisor, issued Plaintiff a notice of discipline for leaning on the railcar. On February 25, Plaintiff had a disciplinary hearing. After the hearing, Chad Devenney, Vice President of Network Operations, reviewed the transcript, exhibits, and video recording. He concluded that Plaintiff violated Defendant's safety rules by putting his hand against the car. On March 1, Defendant terminated Plaintiff's employment.

Plaintiff subsequently filed a complaint with the Occupational Safety and Health Administration ("OSHA") and appealed his dismissal to the Public Law Board.   OSHA upheld

---

[1] The facts are those uncontroverted by the parties unless otherwise noted.

[2] The parties never define what they mean by this.

Defendant's decision in whole, but the Public Law Board held that dismissal was too severe even though Plaintiff violated Defendant's rules. It reinstated Plaintiff in his previous position on August 18, 2020, without backpay for time lost. Plaintiff continued to seek backpay for the time he was laid off.

On May 3, 2022, Plaintiff participated in a Department of Labor hearing before an administrative law judge. During that hearing, one of Plaintiff's coworkers—Jeffrey Spigarelli—testified regarding a phone conversation he claims to have overheard between Devenney and Pollard. Spigarelli claimed that Devenney told Pollard he was tired of hearing about Plaintiff. Devenney then directed Pollard to "take care of the problem." When cross-examined, Spigarelli admitted to not remembering whether the call took place in December 2018 or January 2019. He also stated he was not fully listening, was merely walking by the office at the time, could not remember the exact words, and did not think of the call as a big deal.

At some unspecified point, Plaintiff claims he took off an unspecified amount of time to assist with the Department of Labor's investigation into his case. Defendant disciplined Plaintiff in an unspecified way for absenteeism during the investigative period. On September 8, 2022, Plaintiff filed a new complaint with OSHA regarding the discipline he received, claiming that his time off constituted protected activity under the FRSA.

On October 19, 2022, Plaintiff initiated the present lawsuit under the FRSA, seeking lost income, an expungement of his record, punitive damages, and attorney's fees. In his Amended Complaint, Plaintiff claimed to engage in three separate instances of protected activity: (1) throwing the switch in January 2019; (2) bracing himself against the railcar in February 2019; and (3) taking time off from work to assist in the OSHA investigation at some unspecified time.

On October 16, 2023, Defendant filed its Motion for Summary Judgment. In its original brief, Defendant seeks summary judgment on Plaintiff's claim regarding his first two instances of protected activity. However, Defendant does not address Plaintiff's absenteeism claim at all, nor does Defendant include facts in its separately filed Statement of Facts regarding this claim.

In Plaintiff's Response, he addresses Defendant's main argument regarding the first two claimed instances of protected activity. Plaintiff further contends that summary judgment is improper for his absenteeism claim as well. Defendant argues for summary judgment on Plaintiff's absenteeism claim for the first time in its Reply.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[4] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[5] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] The court views

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[6] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[7] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

all evidence and reasonable inferences in the light most favorable to the non-moving party.[8] But the "mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient" to create a genuine issue of material fact.[9] Rather, "the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant."[10]

### III.     Analysis

Before addressing the substance of the parties' Motions, the Court must admonish the parties themselves. Their briefs ignore Local Rule 56.1 by failing to begin their briefs with numbered statement of facts.[11] Instead, they file their statement of facts and response/replies thereto separately. This unusual practice might have escaped the Court's attention had the parties not used their separate attachments to violate the Court's rule on page limitations. Standing alone, Plaintiff's Response and Defendant's Reply appear to comport with this Court's page limitations. However, Plaintiff's Response totals 47 pages between his brief and responsive facts attachment. Defendant's Reply is an even worse offender, with its brief and attached statement of facts reaching 30 pages. Neither party requested leave of Court to exceed page limitations.

Local Rule 7.1(d)(2) states that "[p]rincipal briefs in support of, or in response to, summary judgment and class certification motions must not exceed 40 pages and replies must not exceed 15

---

[8] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[9] *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005) (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997)).

[10] *Id.*

[11] *See* D. Kan. R. 56.1(a)–(c) ("The brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts . . . . A brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts . . . . In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).").

pages."[12]  Plaintiff's Response and Defendant's Reply clearly violate this rule.  The Court warns the parties that further violations of Local Rules will not be tolerated.

### A.   Plaintiff's absenteeism claim

In its initial Motion, Defendant does not even reference Plaintiff's absenteeism claim.  Not until its Reply does Defendant raise any argument regarding that claim.  "Arguments raised for the first time in a reply brief are waived and will not be considered."[13]  Because Defendant failed to raise any argument regarding Plaintiff's absenteeism claim in its initial brief, the Court concludes Defendant waived any argument regarding that claim for the purposes of summary judgment.  Therefore, Defendant's Motion as to Plaintiff's absenteeism claim is denied.

### B.   Plaintiff's remaining claims under the Federal Rail Safety Act ("FRSA")

To succeed on a FRSA claim, a plaintiff must establish his prima facie case by a preponderance of the evidence.[14]  Establishing a prima case requires showing: "(1) the employee engaged in a protected activity; (2) the employer knew that the employee engaged in the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."[15]  If the employee succeeds, the burden shifts to the employer to "demonstrate[] by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that" employee's protected activity.[16]

---

[12] D. Kan. R. 7.1(d)(2).

[13] *See Klima Well Serv., Inc. v. Hurley*, 133 F. Supp. 3d 1297, 1302 n.2 (D. Kan. 2015).

[14] *Fresquez v. BNSF Ry. Co.*, 52 F.4th 1280, 1296 (10th Cir. 2022).

[15] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1212 (10th Cir. 2018) (further citation and quotations omitted).

[16] 49 U.S.C. § 42121(b)(2)(B)(iv).

The third element of Plaintiff's prima facie case is not at issue, as the parties agree that Plaintiff's termination and withheld backpay constituted unfavorable personnel actions. Thus, the Court will direct its analysis toward the remaining elements.

### 1.     *Protected activity*

Plaintiff claims that he engaged in three instances of protected activity under the FRSA. Specifically, Plaintiff claims two parts of the FRSA apply to his case: 49 U.S.C. §§ 20109(a)(2) and 20109(b)(1)(B). Section 20109(a)(2) prohibits railroad carriers from initiating adverse employment actions against an employee who refuses "to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security." Similarly, § 20109(b)(1)(B) prevents railroad carriers from discriminating against an employee for "refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties" but only if:

> (A) the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;
>
> (B) a reasonable individual in the circumstances then confronting the employee would conclude that—
>
>> (i) the hazardous condition presents an imminent danger of death or serious injury; and
>>
>> (ii) the urgency of the situation does not allow sufficient time to eliminate the danger without such refusal; and
>
> (C) the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, or not to authorize the use of the hazardous equipment, track, or structures, unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced.[17]

---

[17] *Id.* § 42121(b)(2)b)(2).

Here, Plaintiff claims to have engaged in protected activity on two occasions. First, he denied letting the engineer throw a switch along a track because doing so would have left the locomotive unattended, creating a dangerous situation. Second, he claims to have braced himself on a railcar to avoid slipping and falling.

From the uncontroverted facts, Plaintiff cannot show that he engaged in protected activity under § 20109(a)(2). "To qualify as a 'protected activity' under § 20109(a)(1) [or (2)], the employee must identify a specific federal law, rule, or regulation related to railroad safety or security that the employee reasonably believes to be implicated by his complaints."[18] Plaintiff does not attempt to identify any Federal law, rule, or regulation that he refused to violate. Rather, he contends that throwing the switch and bracing himself against the railcar comported with *Defendant's* rules and regulations.[19] This is facially insufficient to establish the existence of protected activity under § 20109(a)(2).

Accordingly, the Court must examine whether Plaintiff's acts constitute protected activity under § 20109(b)(1)(B). Regarding the train switch, the Court concludes there is a genuine dispute of material fact as to whether Plaintiff's refusal to let the engineer throw the switch constituted protected activity. Plaintiff has presented some evidence that Defendant had a standing order requiring engineers to throw the switch. And there is some evidence that leaving the train unattended could result in a hazardous situation. By throwing the switch himself instead of allowing the engineer to leave the train, Plaintiff effectively refused to work when confronted by

---

[18] *Jones v. BNSF Ry. Co.*, 2016 WL 183514, at *6 (D. Kan. Jan. 14, 2016) (citing *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 n.3 (8th Cir. 2014)).

[19] In his Response, Plaintiff argues that the very fact that railroad companies must train their employees regarding the companies' operating rules means that *any* of the companies' rules are Federal rules. The Court disagrees.

a safety concern. Thus, a reasonable jury could conclude that by throwing the switch, Plaintiff engaged in protected activity under § 20109(b)(1)(B).

A reasonable jury could also conclude that this instance meets the criteria under § 20109(b)(2). First, Plaintiff appears to have acted in good faith. Second, a reasonable person would recognize that an unattended railcar presents a hazardous condition capable of death or serious injury. Third, the urgency of the situation seems obvious, considering that the train was stopped and waiting for someone to throw the switch. Finally, Plaintiff informed a manager that he would personally throw the switch. Therefore, Plaintiff has demonstrated a genuine issue of material fact as to whether throwing the switch constitutes protected activity.

Plaintiff also contends that leaning against the railcar constituted protected activity because in that moment, he refused to work when bracing himself due to the icy ground. Assuming without deciding that leaning on a railcar constitutes refusal to work, the Court finds that Plaintiff fails to show how the situation met § 20109(b)(2)'s criteria.

Specifically, Plaintiff cannot show the lack of any reasonable alternatives to leaning on the railcar. He also fails to show that a reasonable person in his position would conclude that there was an icy surface capable of inflicting death or serious injury absent leaning on the railcar. The only evidence before this Court of any icy condition is Plaintiff's own testimony, testimony which the video calls into serious doubt. In that video, Plaintiff walks towards the railcars without difficulty, stands next to the railcar without slipping for several seconds, and then puts out his right arm against the side of the railcar. Plaintiff offers nothing except his subjective opinion, which is unhelpful to the trier of fact in evaluating the objective reasonableness of Plaintiff's actions. Similarly, Plaintiff does not address the situation's urgency nor whether he could have informed

Defendant of the allegedly hazardous condition. Without having demonstrated that "bracing" against the railcar meets the criteria under § 20109(b)(2), Plaintiff cannot create a genuine issue of material fact as to whether he engaged in protected activity. Thus, he fails to meet the first element of his prima facie case on this claim. Accordingly, the Court grants Defendant summary judgment on Plaintiff's FRSA claim so far as it stems from him leaning on the railcar.

*2.     Knowledge of protected activity*

Because Plaintiff has established a genuine issue of fact on the first element of his FRSA claim, the Court must examine whether Defendant knew of Plaintiff throwing the switch. Under Tenth Circuit precedent, a plaintiff bringing an FRSA claim must show that the decisionmaker behind the adverse personnel action had knowledge of the protected activity.[20]

Here, the parties agree that Devenney was responsible for terminating Plaintiff. But the *only* piece of evidence which could potentially support any inference that Devenney knew about Plaintiff throwing the switch is Spigarelli's testimony at the administrative hearing.

Defendant objects to Spigarelli's testimony as inadmissible hearsay. It is well established that "[h]earsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment."[21] However, if Spigarelli is to be believed, then Fed. R. Evid. 801(d)(2)(D) would apply. The rule excludes from the definition of hearsay any statement offered against an opposing party if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."[22] Devenney was undisputedly Defendant's employee when the phone conversation purportedly took place. And Plaintiff's continued employment with

---

[20] *Lincoln*, 900 F.3d at 1213.

[21] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir.2000).

[22] Fed. R. Evid. 801(d)(2)(D).

Defendant falls within the scope of Devenney's responsibilities. Therefore, if Spigarelli's testimony is credible—a determination the Court is not allowed to make at this stage—then Devenney's statement would be admissible.

However, even if Spigarelli's testimony is not hearsay, it relies on multiple layers of speculation and is thus unreliable. First, Spigarelli offered no reason at the hearing as to why he believed Devenney was speaking to Pollard. Without offering any foundation, his conclusion on that point is purely speculative. Likewise, it is speculative that Devenney referred to Plaintiff throwing the switch, especially since Spigarelli cannot say whether Devenney's phone call occurred after that incident or before. Finally, it is speculative that Devenney intended Plaintiff harm by instructing the other conversant to "take care of the problem."

The Court must conclude that no reasonable jury could find that Devenney knew that Plaintiff threw the switch based solely on Spigarelli's wholly speculative testimony. Therefore, the Court finds that Plaintiff has failed his burden to present sufficient evidence on the second element of his FRSA claim for throwing the switch. Accordingly, the Court grants summary judgment to Defendant on Plaintiff's FRSA claim regarding the thrown switch.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 36) is **GRANTED** as to Plaintiff's FRSA claims regarding the thrown switch and Plaintiff bracing himself against the railcar.

**IT IS FURTHER ORDERED** that Defendant's Motion (Doc. 36) is **DENIED** as to Plaintiff's FRSA absenteeism claim.

**IT IS SO ORDERED.**

Dated this 9th day of February, 2024.

                                                    ERIC F. MELGREN
                                                    CHIEF UNITED STATES DISTRICT JUDGE